**UNITED STATES of America, Plaintiff,**

v.

**Otis Lamont GRIFFIN, Defendant.**

**No. CR 81–0130 TUC ACM.**

United States District Court,
D. Arizona,
Tucson Division.

Feb. 18, 1986.

Negatu Molla, Asst. U.S. Atty., Tucson, Ariz., for plaintiff.

Fredric F. Kay, Federal Public Defender, Tucson, Ariz., for defendant.

## ORDER

MARQUEZ, District Judge.

The Defendant, OTIS LAMONT GRIFFIN, has filed a timely motion for reduction of sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

The court has reviewed the pre-sentence report, the matters considered by the court at the time of sentencing, the motion and the attachments. In addition, the court has also examined the court file in this matter.

Defendant Griffin was convicted following a jury trial for various narcotic violations. On September 18, 1981 this court sentenced the Defendant to three concurrent three year terms in prison and a five year special parole term. Defendant was permitted to remain free on bond pending appeal. Following the affirmance of the conviction by the Ninth Circuit Court of Appeals, the Defendant filed a motion under Rule 35 of the Federal Rules of Criminal Procedure to reduce his sentence. On April 22, 1983 this court granted that motion and sentenced the Defendant to three concurrent three year terms but suspended that sentence conditionally upon the Defendant's serving of 179 days incarceration followed by a three year period of probation. This is commonly called a split sentence.

The Defendant served his term of imprisonment and began the probationary period.

---

On February 1, 1985 this court revoked Mr. Griffin's probation and reimposed the three concurrent three year terms of incarceration. At that time, however, the court again suspended the execution of the sentence and placed the Defendant on five years probation.

Another petition to revoke Mr. Griffin's probation was filed on September 11, 1985. Following a hearing on that matter, this court found that revocation was appropriate. The court's order stated in part:

IT IS FURTHER ORDERED that the defendant is committed to the custody of the Attorney General or his authorized representative for a period of fifteen (15) months. The defendant will be remanded to the custody of the United States Marshal.

IT IS FURTHER ORDERED that the defendant will receive credit for any time served on the original sentence.

*Order Revoking Probation*, filed October 11, 1985, page 2.

The Court worded the Order in this manner to avoid any possible misunderstanding of the Court's intention. The Court felt that if the prior 179 day term of incarceration was not mentioned, someone could reasonably wonder if the Court intended that he spend an additional 15 months of incarceration. If the Court had sentenced the defendant to 9 months without mentioning the prior 179 days, someone could wonder if the defendant was to receive credit for the prior term, thus resulting in a 3 month term. Unfortunately, but not surprising to the Court, it appears that the Bureau of Prisons has decided either that the Court's intention is not clear, or that the Bureau's guidelines take precedence and will be applied regardless of what the Court intended. The latter is more probable since it is inconceivable that the Court's Order is ambiguous.

In their infinite wisdom, the Bureau's staff has determined that Mr. Griffin must serve 15 months in addition to the prior 179 day term.

They have calculated Mr. Griffin's sentence according to Bureau of Prisons policies and have determined that the sentences imposed totalled twenty one months, the fifteen months imposed on October 11, 1985 and the 179 days imposed on April 22, 1983. Once the maximum sentence is calculated to be twenty one months, the Bureau of Prisons policy allows the credit of time already served to be deducted, resulting in their calculation that Mr. Griffin must serve fifteen months on this sentence. This determination is the basis of the present motion to reduce the sentence.

Since it was counsel for Mr. Griffin who had the audacity to challenge the Bureau of Prisons calculation in this case, this Court directed him to obtain a written explanation from Mr. Paul Girvan, Records Office, Federal Correctional Institution, Big Spring, Texas, where the defendant is confined. Despite several requests, an explanation was not received. A probation officer was able to obtain a copy of the policy under which the Defendant's sentence was computed. That policy and the accompanying memorandum are made a part of the record in this case. The Bureau of Prisons policy in issue is # 7617.1.

Although this court is hesitant to engage in long quotations of government policies, particularly those of the Bureau of Prisons, most of the regulation involved herein warrants quotation in full because of its literary and grammatical clarity:

*Computation of Split Sentences*

Section 3651 of Title 18, U.S.Code, is often referred to throughout the Bureau and institutions as the "Split Sentence" or "741" sentence procedure. The "741" phrase comes from Public Law 85–741 which was the Act of Congress that caused this part of Section 3651 to become law on August 28, 1958. It allows a "Split Sentence" to be imposed, i.e., a period of confinement followed by a period of probation. The court, "Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, if the maximum punishment provided for such offense is more than six months..... may impose a sentence in excess of six months and provide that the defendant be confined in a jail-

type institution or a treatment institution for a period not exceeding six months and that the execution of the remainder of the sentence be suspended and the defendant placed on probation for such period ... as the court deems best.

. . . .

Jail time is applicable to all "Split Sentences."

*The initial confinement terms of "Split Sentences" cannot be aggregated with each other or with other sentences.*

If an individual is recommitted as a probation violator, three different and distinct terms (original overall term, initial confinement term, and probation violator term imposed at the time of revocation) must be considered in determining the term in effect. In all cases, the sentence on revocation will be computed as beginning on the date initially committed to the "Split Sentence," becoming inoperative on the date of release, and resuming on the date recommitted as a probation violator. The term in effect will be determined by adding the term of the initial confinement portion, as imposed, to the term imposed at the time of probation revocation, with the following restriction: UNDER NO CIRCUMSTANCE WILL THE TERM IN EFFECT EXCEED THE TERM OF THE ORIGINAL OVERALL SENTENCE.

In the three most common situations:

1) If a sentence of 5 years is imposed with the proviso that the defendant be confined in a jail-type institution for a period of six months with the balance suspended and placed on probation for 5 years, and he is returned as a probation violator to serve 5 years, the term in effect will be computed as five years.

2) If a sentence of 5 years is imposed with the proviso that the defendant be confined in a jail-type institution for a period of six months with the balance suspended and placed on probation for 5 years, and he is returned as a probation violator to serve 4½ years, the term in effect will be computed as five years.

3) If a sentence of 5 years is imposed with the proviso that the defendant be confined in a jail-type institution for a period of six months with the balance suspended and placed on probation for 5 years, and he is returned as a probation violator to serve 3 years, the term in effect will be computed as three years and six months.

All extra good time (including accrued seniority) and jail time credited to the "Split Sentence" shall also be credited to the term to be served as a result of the probation violation.

Bureau of Prisons policy 7617.1, January 29, 1974 (emphasis added).

The foregoing examples are apparently the way a sentence will be *imposed* by the Bureau of Prisons regardless of the Court's intentions. This court has carefully examined and considered the policy. The court has also reviewed the statutory authority cited in that policy, 18 U.S.C. § 3651. The court notes the clear internal conflict in this policy. The policy states: "The initial confinement terms of "Split Sentences" cannot be aggregated with each other or with other sentences." Yet, shortly thereafter, the policy directs prison officials to add the six month period on top of the sentence imposed by the court. If this is not aggregation of the initial confinement term with the second sentence, then this court does not understand the Bureau of Prisons use of the word "aggregate." [1] The court also fails to understand the distinction between example one and example two above. If the sentencing court determines that the probation violator should serve four and a half years, he will receive five. If the court decides to impose the five year sentence initially imposed, then the Defendant would serve only five years. The court cannot conceive of the reason for the distinction.

---

1. Webster defines the word "aggregate" to mean (1) to collect or gather into a mass or whole; (2) to amount in the aggregate, to total. *Webster's New Collegiate Dictionary,* 1979. Perhaps the

Bureau of Prison's definition is that used to describe an "aggregate" flower: clustered in a dense mass or head. *Id.*

Bureau of Prisons policy 7617.1 eliminates the ability of the court to determine the maximum length of sentence to be imposed in a split sentence probation revocation case contrary to the statutory authority granted to the *courts* under 18 U.S.C. § 3653. It must be difficult for a Defendant to comprehend that when this court imposes a sentence, the Bureau of Prisons is going to increase that term by the six months that he has already served. Six months may not seem a substantial amount of time to the Bureau of Prisons but the court feels that even one day of incarceration is significant. A person's liberty must not be curtailed by the ambiguous policy # 7617.1.

This court is not certain as to how to correct this sentence. It appears that the appropriate thing to do would be to determine the maximum period of time that this court believes that the Defendant should serve. The court should ignore the period of initial confinement of 179 days. This will allow the Bureau of Prisons to tack on the 179 day sentence and then immediately to give the Defendant credit for that same period of time, plus allowing this court to determine the maximum actual period that he will serve. This court is somewhat leery of this method however. The Bureau of Prisons could decide that this policy is invalid and no longer follow it. In that case, the Defendant would be released 179 days prior to what the court intends.

This court wonders if the order that the Defendant receive credit for the time already served has any impact on this case. Had the court not ordered the credit, would the Defendant now be facing a full term of twenty one more months of incarceration? In all likelihood not. However, after reading this policy the Court is not certain.

The Court's dilemma in this matter is based not on this isolated incident. This is a recurring problem with the Bureau of Prisons. There have been several instances in the past twelve months where this court has been requested to reduce its sentences because the imposition of Bureau of Prison policies would result in the Defendant serving a longer sentence than the Court intended. In one case, this court was required to resentence a Defendant not less than three times and is still not certain that the court's intended sentence is being carried out. The need for the repeated sentencings in the other case was prompted by this court's reliance on Bureau of Prison personnel for assistance in wording the order to accomplish the court's intended purpose. Twice the sentence was changed because it turned out that the Bureau's staff had misinterpreted the guidelines and each time it resulted in an improper sentence being imposed. The Court is not blaming the employees of the Bureau, but, on the contrary, sympathizes with their confusion. If the personnel of the Bureau cannot understand the Bureau's policies, the courts do not have a chance. This confusion has done nothing but add a tremendous amount of work for the court, the attorneys, and the probation officers. That extra work would be totally unnecessary if the Bureau of Prison personnel were permitted to use normal intelligent thought processes in determining the length of a sentence to carry out the court's intent. Instead, the Bureau restricts them to legally unsupported, unintelligible and inconsistent policies.[2]

Because the Bureau of Prisons policy 7617.1 as applied here has resulted in the Bureau deliberately ignoring this court's sentencing instructions, the motion to reduce the sentence will be granted. So there can be no confusion, it is the intention of the court that the maximum period of incarceration for this Defendant following the revocation of his probation, is nine (9) months, not counting the prior 179 days.

IT IS ORDERED that the motion to reduce sentence is granted. The judgment and sentence imposed on October 11, 1985 is amended as follows at page 2, lines 10 through 14.

---

2. Replacing these employees with computers would have the desirable effect of reducing budgetary requirements and the computers could undoubtedly impose the Bureau's guidelines regardless of the sentencing Judge's intentions.

IT IS FURTHER ORDERED that the Defendant is committed to the custody of the Attorney General or his authorized representative for a period of nine (9) months. The Defendant will be remanded to the custody of the United States Marshal.[3]

---

**3.** The Court is tempted to add: "The Defendant shall not receive credit for the prior period of incarceration," but this might confuse the Bureau.